IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION


DOROTHY FERRELL,                          ) CIVIL ACTION 4:05-1533-CMC-TER
                                          )
              Plaintiff,                  )
                                          )
       v.                                 )
                                          )REPORT AND RECOMMENDATION
JO ANNE B. BARNHART                       )
COMMISSIONER OF SOCIAL                    )
SECURITY,                                 )
                                          )
              Defendant.                  )
_____  )


       This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues

before the Court are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied. This case was referred to the undersigned for a report and

recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).


## I.  PROCEDURAL HISTORY

       The plaintiff, Dorothy Ferrell, filed applications for disability insurance benefits on

September 19, 2002, alleging inability to work since August 3, 2002 (Tr. 62), due to arthritis in her

back, knees, and neck (Tr. 62, 67). Her applications were denied at all administrative levels  and

upon reconsideration.    Following a hearing held on October 20, 2004 (Tr. 287-315), the

Administrative Law Judge ("ALJ") issued a decision on December 23, 2004, denying plaintiff's

claim, finding plaintiff was not disabled because she had the residual functional capacity to perform a reduced range of light[1] work, and could perform other work existing in significant numbers in the national economy (Tr. 14-34).  The Appeal's Council denied plaintiff's request for review on March 24, 2005, thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under section 205(g) of the Act.

## II.  FACTUAL BACKGROUND

The plaintiff, Dorothy Ferrell, was born January 3, 1952 (Tr. 62), and was 52 years old at the time of the ALJ's decision.    Plaintiff has a ninth grade education (Tr. 73), and worked in the vocationally relevant past as a sewing machine operator (Tr. 68). She stopped working in October 2001, when the plant closed (Tr. 67, 295).

## III.  DISABILITY ANALYSIS

The plaintiff argues that the ALJ erred in not considering the enhancing effect of obesity on the medical conditions from which she suffers. Further, plaintiff argues that the ALJ erred in not finding her credible and "denies disability on the erroneous factual finding that claimant collected unemployment and, therefore, was holding herself out as 'ready, willing, and able to work'."

In the decision of December 23, 2004, the ALJ found  the following:

     1.     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth

---

[1]"Light work involves lifting no more than 20 pounds at a time wit frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial activity since the alleged onset of disability.

3.    The claimant's new onset diabetes mellitus, chronic low back pain from degenerative disc disease lumbar spine, obesity, and back, neck, and knee pain are considered "severe" impairments in combination based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not fully credible for the reasons set forth in the body of the decision.

6.    The claimant has the residual functional capacity for light work. The work is to allow a sit/stand option. The work is not to require crawling, crouching, climbing, squatting, or kneeling. The work is not to require the use of the lower extremities for pushing or pulling. Further, the work is not to require the use the upper extremities for above shoulder level work.

7.    The claimant is unable to perform any of her past relevant work ( 20 CFR §404.1565).

8.    The claimant is a person closely approaching advance age (20 CFR § 404.1563).

9.    The claimant has a "limited education" (20 CFR §404.1564).

10.   The claimant has no transferable skills.

11.   The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12.   Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.10 as a framework for decision-making, and based on the testimony of the vocational expert, there are

3

a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as parking lot attendant, carton packer, and a ticket taker.

13.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

(Tr. 33-34).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to:  (1) whether the decision of the Commissioner is supported by substantial evidence[2] and (2) whether the legal conclusions of the Commissioner are correct under controlling law.  Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978).  "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 390.  Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict.  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  The Court's scope of review is specific and narrow.  It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence.  42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

---

[2]Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

4

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of

disability by showing she was unable to return to her past relevant work.   Grant v. Schweiker, 699

F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to  return to her past relevant work, the burden

is on the Commissioner to come forward with evidence that the plaintiff can perform alternative

work and that such work exists in the regional economy.   The Commissioner may carry the burden

of demonstrating the existence of jobs available in the national economy that the plaintiff can

perform despite the existence of impairments which prevent the return to past relevant work by

obtaining testimony from a vocational expert. Id. at 191.


## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to

the issues in this case. The medical records as set out by the defendant have not been seriously

disputed by the plaintiff. Therefore, the undisputed medical evidence as stated by the defendant is

set forth herein.

Plaintiff has a history of obesity, with a height of 5'4" and weight varying between 187 and

201 pounds (Tr. 95,125,293), and treatment for back pain since at least 1990 (Tr. 274).

Plaintiff fell on August 3, 2002, and developed severe low back pain radiating to the lower

extremity down to the bottom of the right foot with numbness, indicating nerve irritation (Tr. 203).

On August 5, 2002, she received emergency care and x-rays of her knees were negative, and x-rays of her back revealed osteophytes[3] in the lumbar spine, but no compression fractures or subluxations (Tr. 269, 202).

Following her fall, plaintiff's primary care physicians, Raymond K. Allen, M.D., and Arthur Wilcosewski, M.D. saw her regularly for treatment of ongoing pain problems (Tr. 238-274).

Their treatment notes indicated that she moved in pain, but remained ambulatory. They found mild sacroiliac tenderness. Her right knee showed no effusion or warmth. There was no point tenderness in her back (Tr. 260-263).

Plaintiff began receiving treatment from orthopedic surgeon Jafer N. Gheraibeh, M.D. on August 14, 2002 (Tr. 220).

Dr. Gheraibeh subsequently assessed mild obesity, lumbar strain, knee sprain, and chronic pain. His examinations showed no straight leg-raising impairment, full 2+ deep tendon reflexes, good range of motion in the shoulders. He noted that plaintiff's pain got better when she walked around. Throughout her treatment sessions with Dr. Gheraibeh, plaintiff reported ongoing severe low back pain radiating into the right leg with numbness on the bottom of the foot (Tr. 203-237).

Plaintiff began physical therapy on August 3, 2002. Subsequent progress notes indicated that she continued to report diffuse pain, but her flexibility, range of motion, and endurance improved, and she admitted that exercise loosened up her back and decreased her pain. Her physical therapists stressed the importance of exercise for decreasing arthritis pain, although it was noted that she was "not very motivated" with regard to exercise (Tr. 164-193).

---

[3] Osteophyte is defined as a pathological bony outgrowth. MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY (1996).

On September 18, 2002, x-rays taken revealed prominent hypertrophic bony changes in the right knee (Tr. 218).

On October 1, 2002, a chest x-ray taken after plaintiff complained of chest pain revealed moderate cardiac enlargement with no acute cardiopulmonary changes (Tr. 200).

On November 19, 2002, Dr. Gheraibeh wrote a note in which he opined that plaintiff had met maximum rehabilitation, and that she was entitled to a "5% disability rate" (Tr. 219).

On December 9, 2002, plaintiff underwent a medical examination by Dr. Allen in conjunction with vocational rehabilitation. Dr. Allen found she had impaired ability to flex and stoop, but that there was no straight leg-raising impairment. Plaintiff's reflexes were 2+ bilaterally, and Dr. Allen found no evidence of muscle spasm, joint swelling, muscle weakness, or atrophy. He noted that she used an ambulatory aid off and on. Dr. Allen assessed low back pain and obesity, for which plaintiff was "under no treatment." When asked to described how her impairments limited her ability to perform work functions, he opined that she had trouble bending and stooping. He recommended weight loss (Tr. 95-98).

On December 20, 2002, x-rays taken revealed moderate degenerative changes in the right hip, with no acute bony injury or erosive/destructive changes (Tr. 198).

On January 3, 2003, an MRI of plaintiff's spine taken revealed degenerative changes with no significant spinal canal stenosis and no lumbar disc herniations (Tr. 140).

On January 8, 2003, State Agency physician F.K. Baker, M.D., reviewed plaintiff's records and assessed her physical residual functional capacity. Dr. Baker found plaintiff could perform the

exertional requirements of medium[4] work, with occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 112-119).

On May 14, 2003, a second State Agency physician concurred with Dr. Baker's assessment (Tr. 129-136).

On January 22, 2003, plaintiff presented to neurosurgeon James J. Brennan, M.D., for a consultation. Plaintiff reported a multiple-year history of chronic back pain with occasional radiation into the legs. Plaintiff said the vast majority of her pain was in her back, although she also had pain in her knees, feet, and left shoulder. On examination, Dr. Brennan found plaintiff was "obese, but healthy-appearing," and that she had good muscle tone with no atrophy. Her motor strength was 5/5 (full) in all muscle groups, and her sensation was grossly intact to light touch. Deep tendon reflexes were 1+ and symmetrical, and her coordination was intact. She walked with an antalgic gait and had difficulty bending over. X-rays of the lumbar spine showed normal lumbar alignment with no movement on flexion-extension views. Plaintiff was alert and fully oriented, with intact recent and remote memory, acceptable fund of knowledge and attention span, and appropriate speech. Dr. Brennan assessed lumbar spondylosis, mechanical back pain, and occasional leg pain of unclear etiology. He referred her to a pain specialist for an evaluation of possible pain syndrome (Tr. 124-126).

A physical therapy evaluation note dated February 5, 2003, indicated that plaintiff continued to have limited range of motion, but that she did not require an assistive device, and did not exhibit an antalgia gait. Her balance was normal (Tr. 178).

---

[4]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary or light work." 20 C.F.R. § 404.1567(c).

On October 8, 2003, plaintiff presented to Pee Dee Orthopaedic Associates physical medicine specialist Anthony W. Alexander, M.D., for a consultation. She described a one-year history of low back pain, as well as numbness and tingling in her feet. She rated her pain as a 10 on a scale of one to ten, ten being the worst. On examination, she was alert and oriented, with normal deep tendon reflexes, full 5/5 motor strength, and normal sensation to light touch and pinprick. A straight leg-raising rest was positive for pain at 90 degrees, and plaintiff exhibited tenderness and trigger points in her sacrum and hips. She walked with an antalgic gait and slight limp. X-rays showed disc space narrowing at L5-S1 with spondylosis and facet arthropathy. Dr. Alexander assessed chronic lower back pain, bilateral leg pain and paresthesias, degenerative disc and joint disease of the lumbar spine, and lumbar radiculopathy at L4-5. He provided lumbar epidural steroid injections (Tr. 139-141).

On January 29, 2004, plaintiff presented to rheumatologist Robert E. Turner, III, M.D., for an evaluation of leg and hip pain. Dr. Turner noted that plaintiff did not walk with a limp. Plaintiff also reported shoulder pain that prevented her from being able to comb her hair. She said she stopped working because her plant closed. On examination, Dr. Turner found plaintiff had normal reflexes, grossly intact sensation, and normal motor strength and coordination, with no signs of muscle wasting. She had early osteoarthritic changes in her hands and slightly decreased shoulder range of motion, but a spinal examination was unremarkable and hip range of motion was normal. Her knees, ankles, feet, and toes were unremarkable. Dr. Turner assessed osteoarthritis with new onset diabetes and probable diabetic amyotrophy (Tr. 158-160).

A treatment note from Dr. Turner dated February 26, 2004, indicated that plaintiff was being treated for diabetes with peripheral neuropathy and toxic gastritis. Plaintiff indicated Neurontin

helped with the burning sensation in her feet. She denied having any medication side effects. On examination, her weight was stable and blood pressure was "good." Dr. Turner noted "early" osteoarthritic changes in the hands, slightly decreased range of motion and tenderness in the shoulders, and diminished vibratory sensation in her legs (Tr. 145).

On May 25, 2004, plaintiff showed moderate degenerative changes in her right hip, with no acute bony injury or erosive/destructive changes (Tr. 245).

On September 14, 2004, plaintiff told Dr. Allen that she had obtained some improvement with steroid injections, and also improved in the past with the use of Skelaxin (a muscle relaxant) (Tr. 241).

On October 22, 2004, Dr. Allen noted that plaintiff's diabetes was under "good control." Her blood pressure was normal at 120/80. There was not evidence of swelling in her extremities (Tr. 238).

## V. ARGUMENTS

Plaintiff first asserts that the ALJ erred in not considering the enhancing effect of obesity on the medical conditions from which she suffers. Plaintiff contends that the ALJ's order contains no indication that this was considered. Defendant argues that the ALJ specifically considered her weight and related problems throughout his decision and acknowledged that obesity was a severe impairment.

A review of the ALJ's decision reveals the following with regard to this issue:

> The medical evidence shows that the claimant has chronic low back pain with degenerative disc disease, back, neck, and knee pain, obesity, and new onset non-insulin dependent diabetes mellitus.

11

> These impairments are severe within the meaning of the Regulations when considered in combination, but they are not severe enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No.4.
>
> Regarding the impairments of back, knees, neck, and obesity on January 21, 2002, the claimant weighed 199.4 pounds. On August 5, 2002, the claimant had moderate swelling and good range of motion of the knees and back. She was in no acute distress. On August 8, 2002, the claimant was in no acute distress. She was referred to an orthopaedic specialist after examination showed pain on weight bearing and tenderness over the patella of the left knee although there was good range of motion.

(Tr. 26).

Throughout the ALJ's decision, he refers to plaintiff's obesity and the doctor's reports on her obesity. In finding that plaintiff had the residual functional capacity to perform light work with restrictions, the ALJ found that the work would have to allow a sit/stand option, would not require crawling, crouching, climbing, squatting, or kneeling. Further, the work would not require the use of the lower extremities for pushing or pulling and would not require the use of the upper extremities for above shoulder level work.

A review of the medical evidence reveals that none of plaintiff's physicians placed any restrictions or limitations on her abilities due to her obesity except for bending and stooping by Dr. Allen. (Tr. 98). As set out above, the ALJ considered these limitations in deciding plaintiff's residual functional capacity. Further, notwithstanding her weight, plaintiff's diabetes remained under control, she had normal blood pressure, and she had no acute cardiopulmonary problems. It is also noted that plaintiff's obesity never required her physicians to prescribe the use of ambulatory aids.

The listing for obesity was eliminated in 1999 but Social Security issued Ruling 00-3p on the evaluation of obesity. The Ruling states that obesity must be considered in determining disability and

Residual Functional Capacity. The Ruling states that a person may be found to equal the Listings due to obesity if it markedly limits the claimant's ability to walk and stand. As stated, plaintiff's treating physician stated that her only limitations were bending and stooping which were considered in the RFC. Thus, the undersigned finds that there is substantial evidence to support the ALJ's decision in that he did consider obesity in combination with her other multiple impairments.

Plaintiff next argues that the ALJ erred in not finding plaintiff credible. Specifically, plaintiff argues that the ALJ was incorrect in considering the receipt of unemployment benefits when assessing credibility. Plaintiff further asserts that the ALJ ignored medical evidence relating to her degenerative conditions. Plaintiff argues that the ALJ ignored an x-ray report from August 5, 2002, showing lumbar spine views that demonstrated large bridging anterior asteophytes at T12 to L1 and L12 levels along with small anterior osteophytes at the mid-lower lumbar levels. Plaintiff asserts that the ALJ also ignored an x-ray report on March 19, 2003, which referred to the degeneration as moderate with bridging anterior osteophytes noted at the upper and lower lumbar levels. (Tr. 202). Plaintiff also argues that the ALJ ignored the x-ray report of her knee which revealed "prominent hypertrophic bony changes extend along the superior and inferior aspect of the patella."

In assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists,  (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  A claimant's allegations of pain itself or its severity need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be

13

expected to cause the pain the claimant alleges she suffers.  A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ cited numerous reasons for finding that plaintiff's credibility was not without question.  For instance, the ALJ concluded that:

> Since there exists a medical determinable physical or mental impairment which could reasonably be expected to produce the symptoms alleged by the claimant, the undersigned must evaluate the intensity, persistence, and functionally limiting effects of the symptoms alleged to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. I have not required the presence of objective medical evidence in order to determine the intensity and persistence of the pain and other symptoms alleged. Rather, I have specifically considered: the nature, location, onset, duration, frequency, radiation, and intensity of any symptom, including pain; the precipitating and aggravating factors; the type, dosage effectiveness, and adverse side effects of any medication; the treatment, other than medication, for relief of pain or other symptoms; the alleged functional restrictions; and the claimant's activities of daily living. I have carefully considered the claimant's statements about her symptoms with the rest of the relevant evidence in the case record. I find that the claimant's allegations have been inconsistent with the medical evidence of record, the claimant's reports to her physicians, and the treatment sought and received.
>
> Specifically, the claimant reported she was receiving unemployment benefits of $576.00 per month. Although the receipt of unemployment compensation is not an absolute bar to the receipt of Social Security disability insurance benefits, this may be considered in assessing the claimant's credibility. During the time the claimant received unemployment compensation, she held herself out as being ready, willing, and able to work, a position inconsistent with the position which she takes that she has been disabled.

> The claimant has described daily activities, which are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. She noted she attends church services.
>
> Although the claimant testified she uses a cane for balance, a review of the clinical evidence does not reflect she was ever prescribed a cane or instructed to use a cane due to a problem with balance.

(Tr. 25-26).

The ALJ goes on to discuss radiographic results and physician's reports before concluding:

> . . . I find the testimony of the claimant is not fully credible concerning the severity of her symptoms and the extent of her limitations. Neither the severity nor the extent is supported by the objective medical evidence of record.

(Tr. 31).

The court has addressed the issue and standard of pain as follows:

> 'An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. . . . there must be medical signs and findings, established by medically acceptable, clinical or laboratory techniques, which show the existence of a medical impairment . . . which could reasonably be expected to produce the pain or other symptoms alleged and which . . . would lead to a conclusion that the individual is under a disability.'

Foster v. Heckler, 780 F.2d. 1125, 1128-29, (4th Cir. 1986), quoting from the Social Security Reform Act of 1984. See also, SSR 90-1p and Hyatt v. Heckler, 807 F.2d 379 (4th Cir. 1986).

As previously stated, there is substantial evidence to support the ALJ's decision as to plaintiff's allegations of pain and the determination of her credibility. At the hearing, plaintiff testified that she had no feeling in her legs but then testified that she had a burning sensation in them. Plaintiff reported constant back pain, shoulder pain, and hip pain. Plaintiff said she had to use a cane for balance and that she could only stand for 10 minutes and sit for 20 minutes. As to her daily

15

activities, plaintiff testified that she washes dishes while leaning against her sink, folded laundry, watches television, walks around her yard and attends church. (Tr. 299-300). However, x-rays taken after her fall in August 2002, were negative with regard to her knees and showed osteophytes in the back with no evidence of compression fractures. (Tr. 202). Subsequent x-rays revealed moderated degeneration in the hips, but there were no signs of acute bony injury or erosive/destructive changes. (Tr. 142, 198, 245). Further, an MRI of her spine revealed degenerative changes, but no signs of significant spinal canal stenosis or disc herniation and the lumbar alignment was normal. (Tr. 126, 140). Drs. Allen and Wilcosewski found only mild sacroiliac tenderness, no effusion or warmth in her knees, and no point tenderness in her back. (Tr. 260, 263). Her reflexes were normal, she had good to slightly decreased range of motion in her shoulders, normal hip range of motion, full 5/5 motor strength in all muscle groups, intact sensation, normal balance, and intact coordination. (Tr. 125, 139, 145, 159, 178, 208, 210). In January 2004, examinations of plaintiff's spine, knees, ankles, and feet were unremarkable.

As to plaintiff's obesity and diabetes, she indicated that medicine helped decrease the burning sensation in her feet, her blood pressure remained normal, there was no evidence of edema, and she had no acute cardiolpulmonary problems. As plaintiff pointed out in her brief, Dr. Turner assessed probable diabetic amyotrophy in January 2004 (tr. 160) but there was no evidence of muscle wasting or atrophy in the record or in Dr. Turner's own records. Based on plaintiff's own reports to her physicians, she stated that her pain improved upon walking, exercise loosened up her back (tr. 164, 166, 169, 172, 181). Plaintiff was encouraged to exercise.  Physician's reports and plaintiff's testimony revealed that medication helped to decrease her pain. (Tr. 145, 238, 241, 305). As

16

previously stated, the only limitation or restriction placed on her by her physicians was by Dr. Allen who opined that she only had trouble bending and stooping.

Based on a review of the ALJ's decision, the ALJ considered the x-rays, MRI and clinical findings pertaining to plaintiff's degenerative and arthritic conditions. The ALJ limited plaintiff to a reduced range of light work with a sit/stand option, no crawling, crouching, climbing, squatting, or kneeling, no use of lower extremities for pushing or pulling and no use of the upper extremities for above shoulder level work. As to plaintiff's knee impairment, the ALJ specifically found that her knee impairment was a severe impairment. (Tr. 33). It is noted that other than the limitations on bending and stooping, no physician placed any limitations related to plaintiff's knee pain. However, the RFC as found by the ALJ reveals that he took these conditions into consideration. There is substantial evidence to support the ALJ's decision that plaintiff's arthritis, knee pain, and diabetes were not so limiting as to prevent her from performing a limited range of light work.

The ALJ's evaluation of plaintiff's subjective complaints complies with the Fourth Circuit precedent and the Commissioner's regulations. The ALJ adequately addressed each complaint, as discussed, and explained his evaluation. Further, as to plaintiff's argument that the ALJ erred in considering the fact that plaintiff received unemployment benefits in determining credibility, this argument is not valid. The ALJ did not base the credibility determination on this factor alone and even stated in the order that "although the receipt of unemployment compensation is not an absolute bar to the receipt of Social Security insurance benefits, this may be considered." (Tr. 25). An application for unemployment compensation benefits may provide some evidence, though not conclusive, to negate a claim of disability, since an applicant for unemployment compensation benefits must attest to being available, willing, and able to work, if the claimant's assertion is used

17

merely as one piece of evidence tending to support the denial of benefits. See SSLP § 43:94; Jernigan v. Sullivan, 948 F.2d 1070, (8th Cir. 1991); and, Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997). Therefore, the undersigned concludes that there is substantial evidence to support the ALJ's determination as to plaintiff's complaints of pain and her credibility based on the objective medical evidence. While the plaintiff may have limitations, there is substantial evidence to support the ALJ's decision that they are not so severe as to preclude her from the demands of all work.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

Plaintiff also contends that the VE's testimony indicated she could not perform any work when her attorney asked the VE to consider the limitations of not being exposed to extreme temperatures and that she needed to miss more than three days of work per week.

The purpose of a vocational expert's testimony is to assist the ALJ in determining whether jobs exist in the economy which a particular claimant could perform. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The ALJ found that the plaintiff has the residual functional capacity to perform light work with additional limitations as set out above but is unable to perform any of her past relevant work. (Tr. 33). Therefore, the burden shifted to the Commissioner to show other work existed in significant numbers in the national economy that she could perform. The Commissioner

met this burden through the testimony of Dr. Schmitt, a vocational expert ("VE"). (Tr. 63-65).  The ALJ presented a hypothetical to the VE based on an individual of claimant's age, work experience, and education. In addition, he was asked to assume that this person is limited to light exertional level work, wouldn't have to lift more than 20 pounds occasionally, and up to ten pounds on a more frequent basis, and the job would be unskilled, and there would be postural limitations, so there would be no crawling, or crouching, or climbing, or squatting, or kneeling, and there would be lower extremity limitations, so there would be no use of the legs for pushing or pulling, or use of foot or leg controls, and there would be upper extremity limitations, so there would be no reaching above shoulder level, no work above shoulder level, and the job would offer the ability to sit or stand, so there would have a sit/stand option, and still allow the employee to perform the work functions. The vocational expert testified that given these characteristics this person could perform jobs in significant numbers in the economy.

The ALJ is required to set out the claimant's physical and mental impairments.  The ALJ need not treat every allegation of impairment by claimant as fact; the ALJ is entitled and required to make factual determinations on disputed conditions.  In this case, the ALJ found claimant's claim of total disability not entirely credible.  The ALJ posed a hypothetical to the expert based on those allegations of impairment which the ALJ concluded were credible and supported by evidence in the record. Further, plaintiff's counsel's limitations of not being exposed to extreme temperatures and that she would miss more than three day of work per week were not supported by the record. Based on the testimony of the vocational expert, the ALJ held there were relevant jobs in the national economy, in significant number, which the plaintiff could perform.  Therefore, the ALJ properly relied on the VE's testimony in finding that the plaintiff was not disabled because she could perform

jobs that existed in significant numbers (Tr. 21).  Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991).  Accordingly, the undersigned finds that the ALJ's hypothetical to the VE was not defective but was supported by substantial evidence.

## VI.  CONCLUSION

Despite the plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this court concludes that the ALJ's findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be AFFIRMED.


Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge


August 1, 2006
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**

20

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503
